Paula D. HRUBAN & John
Hruban, Respondents,

v.

HICKMAN MILLS CLINIC, INC., & F.
Vernon Basantz, M.D., Appellants.

No. WD 48872.

Missouri Court of Appeals,
Western District.

Jan. 24, 1995.

---

Kirk J. Goza, Thomas A. Sheehan, Kansas City, for appellants.

D.C. Bradford, Omaha, Neb., John L. White, Leavenworth, Kan., for respondents.

Before ULRICH, P.J., and KENNEDY and BERREY, JJ.

BERREY, Judge.

Defendants appeal from the trial court's order granting plaintiffs' motion for new trial after a jury had returned a verdict in favor of defendants.

Plaintiffs filed a medical malpractice action against defendants alleging that they negligently failed to timely diagnose and treat Paula Hruban's appendicitis and as a result, her appendix ruptured, causing a number of complications.

On September 27, 1989, Mrs. Hruban went to Hickman Mills Clinic. She was examined by Dr. Basantz and complained of abdominal pain. Several tests were conducted including a pelvic exam and blood tests. Dr. Basantz

determined that Mrs. Hruban was suffering from pelvic inflammatory disease and that there was a possibility she had an inflamed appendix.

Mrs. Hruban was subsequently admitted to Baptist Medical Center for observation and treatment. Dr. Basantz visited Mrs. Hruban at the hospital on September 28. Her condition had improved and she was no longer nauseous. On the morning of September 29, Dr. Basantz again visited Mrs. Hruban. She was responding well to treatment so Dr. Basantz released Mrs. Hruban from the hospital.

Mrs. Hruban's condition deteriorated after she left the hospital. On October 1, two days after she was discharged, Mrs. Hruban was taken to the Baptist Medical Center emergency room. Her appendix was removed the next day.

The tissue removed from Mrs. Hruban was examined by Baptist Medical Center pathologist Dr. Mark Ost. Dr. Ost examined slides of Mrs. Hruban's tissue samples and prepared a pathology report which was made a part of Mrs. Hruban's medical records. Defendants did not disclose Dr. Ost as an expert witness in their response to an interrogatory from plaintiffs.

At the trial, Dr. Ost testified that Mrs. Hruban suffered from pelvic inflammatory disease when she was first seen by Dr. Basantz. Dr. Ost read from the pathology report he had prepared. The pathology report was admitted into evidence without objection. Dr. Ost testified that Mrs. Hruban's right ovaduct showed acute and chronic salpingitis edema and fibrosis. Dr. Ost explained that such a finding meant that Mrs. Hruban had pelvic inflammatory disease for at least seven days before her surgery on October 3, 1989.

Dr. Ost testified, over objection, that based on his pathologic findings at the time of Mrs. Hruban's surgery, he believed Mrs. Hruban had a leaking appendix for at least two weeks prior to her surgery. Dr. Ost used photographs of the slides he had prepared of Mrs. Hruban's tissue, to explain his opinion to the jury.

Defendants' medical expert, Dr. William Hoadley, testified that based upon Mrs. Hruban's symptoms, it was reasonable for Dr. Basantz to conclude that she suffered from pelvic inflammatory disease. Dr. Hoadley testified, without objection, that Mrs. Hruban's appendix ruptured prior to her examination by Dr. Basantz on September 27, 1989. He stated that based upon Dr. Ost's pathology report Mrs. Hruban was suffering from pelvic inflammatory disease on September 27, 1989. Dr. Hoadley testified that Mrs. Hruban's appendix was leaking prior to her visit to Dr. Basantz, and "I don't see any reason that it would make any difference whether she was operated on the 27th or October [2] ..."

The jury returned a unanimous verdict in favor of defendants. The plaintiffs filed a motion for new trial based upon the admission of Dr. Ost's opinions and an alleged instructional error. The trial court sustained plaintiffs' motion for new trial.

## I

Defendants raise two points on appeal. Point I alleges the trial court erred in granting a new trial because Dr. Ost's testimony was properly admitted as a fact witness and not as an expert witness within the meaning of Rule 56.01 so that no pretrial disclosure was required. Defendants contend that plaintiffs were not prejudiced by Dr. Ost's testimony as the same opinions were admitted in evidence without objection from Dr. Hoadley, and that plaintiffs had at least four days notice before trial that Dr. Ost was going to testify.

Witnesses who have personal knowledge of events, and who are not engaged by a party in anticipation of litigation, are not expert witnesses whose identity must be disclosed before trial. *Owen v. City of Springfield*, 741 S.W.2d 16, 20 (Mo. banc 1987). If some of the witnesses to the events of a case, make use of "their learning and experience for conclusions and opinions, and could in that sense be called 'expert testimony,' that does not make them 'expert witnesses' within the meaning of Rule 56.01(b)(4)." *Id.*

The above rule has been applied in cases involving the testimony of physicians. In *Stone v. Duffy Distributors, Inc.*, 785 S.W.2d

671, 675 (Mo.App.1990) the court held that a physician who participates in diagnosis and treatment of the plaintiff was not hired in anticipation of litigation and could give his opinion without first being designated as an "expert witness." In *DeLaporte v. Robey Bldg. Supply, Inc.*, 812 S.W.2d 526, 535 (Mo. App.1991) the court held that the plaintiff's former treating physician was not an expert witness who had to be disclosed in response to an interrogatory where the physician had not been engaged by the defendant in anticipation of litigation in order to testify about scientific or technical matters.

■ Dr. Ost examined tissue samples taken from Mrs. Hruban during her surgery. His microscopic evaluation and pathology report aided in the diagnosis that Mrs. Hruban was suffering from chronic salpingitis. Dr. Ost testified about his findings as a pathologist. Dr. Ost was not retained by the defendants in anticipation of litigation and cannot be classified as an "expert witness" under Rule 56.01(b)(4).

■ We note that defendant's expert, Dr. William Hoadley, testified without objection to the same opinion as Dr. Ost. Dr. Hoadley testified, as Dr. Ost did, that Mrs. Hruban's appendix had perforated before her initial visit to Dr. Basantz at the Hickman Mills Clinic. A party cannot complain of error in the admission of evidence when the same or substantially similar evidence was received without objection during the trial. *Drining v. Missouri Bone & Joint Clinic, Inc.*, 730 S.W.2d 293, 294 (Mo.App.1987).

■ Plaintiffs' counsel admitted at trial that he was given notice three or four days before trial that defendants intended to call Dr. Ost as a witness. Plaintiffs' counsel could have deposed Dr. Ost at that time, asked for an opportunity to interview Dr. Ost during trial, or asked for a continuance of the trial setting. Plaintiffs cannot claim they were surprised by Dr. Ost's testimony as they failed to pursue the several remedies available to them.

## II

Point II alleges, to the extent the trial court may have granted a new trial, due to alleged instructional error, it erred because plaintiffs' proposed Instruction No. C was properly rejected. The trial court refused to submit plaintiff's offered Instruction No. C, which stated:

> Your verdict must be for plaintiffs if you believe:
>
> First, defendant failed to properly diagnose and treat plaintiff, Paula Hruban's appendicitis.
>
> Second, defendant was thereby negligent, and
>
> Third, as a result of such negligence, plaintiffs sustained damage.

Instead, Instruction No. 8 was submitted to the jury as follows:

> Your verdict must be for plaintiff Paula D. Schultz Hruban and against defendant F. Vernon Basantz, M.D. if you believe:
>
> First, defendant F. Vernon Basantz, M.D., failed to diagnose appendicitis and have an operation performed on Mrs. Hruban on or before September 28, 1989, and
>
> Second, defendant F. Vernon Basantz, M.D. was thereby negligent, and
>
> Third, as a direct result of such negligence plaintiff Paula D. Schultz Hruban sustained damage.

Upon direct examination, plaintiff's medical expert, Dr. Richard Clemens testified as follows:

Q. Now in this particular case, do you have an opinion based on a reasonable degree of medical certainty as to when Mrs. Hruban should have—should have, in effect, been operated on for an appendicitis?

A. She should have been operated on I believe the 28th or the day following her evening admission to the hospital.

Q. That would have been the 28th, that would have been Thursday the 28th and it's your opinion that it—that she should have been operated on that date?

A. Yes, sir.

Upon cross examination, Dr. Clemens testified:

Q. Okay. You would agree with me though that if, in fact, Mrs. Hruban's appendix had ruptured before September 28th of 1989, she may well have had all of the complicatons (sic) that she subsequently had?

A. If it had ruptured before the 28th?

Q. That's correct.

A. Yes, regardless of whether the rupture occurred, the complications would have resulted.

. . . . .

Q. In fact, you're not able to narrow it down to any reasonable degree of medical certainty as to a specific time?

A. I cannot specifically pinpoint the time when the rupture of the appendix [occurred], counselor.

■ In a medical malpractice case, a jury instruction which tracks the plaintiffs' expert's testimony is proper in that it does not permit the jury to find for plaintiffs on facts different from those pleaded or proved. *Wilson v. Lockwood,* 711 S.W.2d 545, 553 (Mo. App.1986).

■ The submission of Instruction No. 8 is supported by the testimony of plaintiff's own expert medical witness, Dr. Clemens. According to Dr. Clemens, the only way Mrs. Hruban could have avoided complications was to have surgery on September 28, 1989. In this case, the inclusion of the specific date in Instruction No. 8 is not an instructional error.

The trial court's order granting a new trial is reversed and the jury verdict in favor of defendants is reinstated.

All concur.